UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MATTHEW ROSZAK,
DARRIN EDGECOMBE,
DOUGLAS JOZWIAK,
TRIFON BELADAKIS AND
MARK MICHEL

    Defendants.

CASE 06CV3166
JUDGE CASTILLO
MAG. JUDGE VALDEZ

FILED
JUN 0 8 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I. SUMMARY

1. This case involves insider trading by the Defendants in the securities of Blue Rhino Corporation before a February 2004 public merger announcement. Matthew Roszak, the chief financial officer of a private company owned by a Blue Rhino director and a trusted confidant of the director, abused his position of trust and confidence and misappropriated material, non-public information from the director about the pending merger.

2. Roszak used the information to buy Blue Rhino stock for himself, as well as to tip Defendants Douglas Jozwiak and Darrin Edgecombe and two relatives to the non-public Blue Rhino merger negotiations.

3. Jozwiak and Edgecombe both bought Blue Rhino stock in advance of the acquisition. In addition, Edgecombe tipped Defendants Trifon Beladakis and Mark Michel, the latter a registered representative with Wachovia Securities, LLC. Beladakis and Michel both bought Blue Rhino stock.

4. In total, the Defendants purchased $742,987 of Blue Rhino stock, with many of the purchases occurring just days before the public merger announcement. In addition, after he was tipped and during the week prior to the public merger announcement, Michel purchased more than $1.2 million of Blue Rhino stock on behalf of his relatives and customers at Wachovia. The Defendants profited from these trades by selling the shares of Blue Rhino stock they bought prior to the merger announcement at higher prices after the merger was announced.

5. By engaging in the conduct described above, and described more fully below, each of the Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## II. JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78u-1.

7. The Court has subject matter jurisdiction over this action pursuant to Sections 21(e), 21A, and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e), 78u-1, and 78aa.

8. Personal jurisdiction over the Defendants and venue in the Eastern Division of the Northern District of Illinois are proper because the acts, transactions, practices, and courses of conduct giving rise to the violations alleged in this Complaint occurred in the Eastern Division of the Northern District of Illinois, and all of the Defendants reside in the Eastern Division of the Northern District of Illinois.

9. In connection with the conduct alleged in this Complaint, the Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

### III. DEFENDANTS

10. Roszak, 33, is a resident of Glenview, Illinois. Roszak is chief financial officer of a North Carolina company owned by a former Blue Rhino director. Roszak is also Jozwiak's brother-in-law.

11. Jozwiak, 37, is a resident of Elk Grove Village, Illinois. He works as a technician for a telephone service company, and is Roszak's brother-in-law.

12. Edgecombe, 37, is a resident of Itasca, Illinois. He owns a plastic distribution company in Itasca. Edgecombe is a friend of Roszak, Jozwiak, Beladakis, and Michel.

13. Beladakis, 50, is a resident of Naperville, Illinois. He is the owner and president of another Itasca plastic distribution company, unrelated to Edgecombe's company. Beladakis is a business partner and friend of Edgecombe.

14. Michel, 36, is a resident of Geneva, Illinois. Michel is a registered representative with Wachovia and a friend of Edgecombe.

### IV. RELEVANT ENTITIES

15. Blue Rhino is a North Carolina propane gas and tank distribution company. Before its acquisition by Ferrellgas Partners, LP, Blue Rhino's securities were traded on the Nasdaq National Market. In April 2004, Ferrellgas completed its acquisition of Blue Rhino, which is now a wholly-owned subsidiary of Ferrellgas.

16. Ferrellgas, located in Overland Park, Kansas, is the second-largest U.S. propane marketing and distribution company. Ferrellgas' securities are currently listed on the New York Stock Exchange.

## V. FACTS

### A. Roszak's Relationship With The Blue Rhino Director

17. Roszak has had a close business relationship with former Blue Rhino director Andrew Filipowski for several years. Prior to 2003, Roszak served as the head of mergers and acquisitions at a now-bankrupt Chicago, Illinois, internet company Filipowski owned. Roszak worked on approximately 50 mergers and acquisitions while at that company. Since 2003, Roszak has served as the chief financial officer of a private North Carolina internet company also owned by Filipowski.

18. During all of this time, Roszak has functioned as Filipowski's financial right-hand man. He owns significant interests in Filipowski's many businesses and regularly advises Filipowski on these companies and business ventures. Roszak is in constant contact with Filipowski by telephone and e-mail and in frequent contact with his secretary regarding Filipowski's schedule. Roszak has access to confidential information regarding Filipowski's business interests by virtue of his employment, and Filipowski regularly discusses his business interests, including Blue Rhino, with Roszak.

### B. Blue Rhino Merger Discussions

19. On December 20, 2003, Blue Rhino representatives, including Filipowski, began meeting with Ferrellgas to discuss a potential merger between the companies, after signing a confidentiality agreement the day before. Preliminary due diligence began between the companies on January 6, 2004, and continued until the merger announcement on February 9.

4

20. Between January 27 and January 31, 2004, Blue Rhino board members met with Ferrellgas representatives on a daily basis, sometimes twice a day, to discuss, review and negotiate the merger. Although Filipowski was excluded from participating in these meetings, he was allowed to and did attend them. On Saturday, February 7, 2004, Blue Rhino's board of directors met and approved the merger. Ferrellgas' board of directors approved the deal the next day. On Monday, February 9, 2004, Blue Rhino publicly announced Ferrellgas was acquiring it for $17.00 per share in a $340 million cash transaction. That same day, Blue Rhino's share price increased $2.84, or 20%, to close at $16.74.

### C. Roszak Misappropriates Information About Blue Rhino

21. On the same date as Ferrellgas and Blue Rhino commenced due diligence, Roszak undertook a two-day business trip to North Carolina to meet Filipowski to discuss operations at the internet company where Roszak was chief financial officer. While he was with Filipowski in North Carolina, Roszak learned he was attending frequent meetings outside of the office regarding Blue Rhino and that a significant event was occurring there.

22. On January 8, Roszak and Filipowski sat next to each other on a flight back to Chicago. Just two hours after getting off the plane, Roszak misappropriated the information he had learned about the impending Blue Rhino merger, and called his stock broker and instructed him to use all available cash in his three brokerage accounts to buy more than $95,000 of Blue Rhino stock. Roszak had bought Blue Rhino stock on only one other occasion, eight months previously, for $7,100. Roszak's broker became suspicious during this conversation and asked Roszak if he knew inside information about Blue Rhino.

23. Later that same day, Roszak called his broker again to ask about purchasing Blue Rhino stock options, even though Roszak had never previously bought options on any security

5

before. Again the broker was suspicious, but Roszak denied trading on any improper inside information. Although Roszak ultimately did not purchase Blue Rhino options, he opened an options account based on his conversations with the broker.

24. Three weeks later, on January 29, 2004, as part of an e-mail exchange with Roszak regarding an unrelated business issue, Filipowski sent an e-mail to Roszak stating he could not focus immediately on the issue, in part because he was involved in daily board meetings at Blue Rhino.

25. Roszak deduced from the reference to the daily board meetings that the pending Blue Rhino merger was imminent. On the basis of this material, non-public information, on the night of Thursday, January 29, 2004, Roszak called Jozwiak, Edgecombe, and two other relatives between 6:33 p.m. and 7:26 p.m. Central Standard Time to tip them off about the merger and recommend purchasing Blue Rhino stock.

26. Roszak made three calls to Jozwiak, his brother-in-law – at 6:33 p.m., 6:35 p.m. and 6:52 p.m. Roszak also called Edgecombe, his friend of more than 15 years, at 6:37 p.m. and 7:26 p.m. Edgecombe at the time played on a basketball team with both Roszak and Jozwiak, and knew Roszak worked for Filipowski. Roszak's calls to both men also triggered a series of phone calls between them. Records show there were seven phone calls between Edgecombe and Jozwiak between 6:59 p.m. and 10:09 p.m.

27. Roszak also called two relatives around 7 p.m. The first relative bought almost $16,000 of Blue Rhino stock the next morning (Friday, January 30, 2004). To do this, the relative had to deposit $15,000 into a brokerage account that before then had a total value of only $2,126. The second relative did not even wait until the next morning. Within an hour he had called his

6

broker both at home and on his cell phone. The next morning, the second relative bought $49,500 of Blue Rhino stock.

### D. Jozwiak And Edgecombe Act

28. Jozwiak and Edgecombe also bought Blue Rhino the next morning. Jozwiak, who had never before bought Blue Rhino shares, purchased almost $56,000 worth of the stock at 8:43 a.m. To do so, he sold almost $27,000 of other stocks, and transferred more than $29,000 from his savings account into his brokerage account. Jozwiak's Blue Rhino purchase represented the largest trade he had made in his brokerage account since opening it eleven years earlier. And Jozwiak knew at the time that Roszak worked with Filipowski.

29. Edgecombe bought even more Blue Rhino stock – just under $295,000 – at 8:30 a.m. Edgecombe had never previously purchased Blue Rhino stock. Not coincidentally, telephone records show Jozwiak called Edgecombe four times between 8:21 a.m. and 8:45 a.m. that same day.

30. Edgecombe did not stop with just buying Blue Rhino stock. The same night he heard from Roszak, Edgecombe called two long-time friends, Beladakis and Michel, to alert them to the pending Blue Rhino acquisition. The next morning, he called a business partner, and he subsequently called a relative. All four bought Blue Rhino stock.

31. At 7:32 p.m. on Thursday, January 29, 2004, just two minutes after one of his calls with Roszak, Edgecombe called Beladakis, a long-time friend and business associate. The following morning, Beladakis purchased $137,416 of Blue Rhino stock. Beladakis had never previously purchased shares of Blue Rhino, and his purchase was the largest trade he had made in his brokerage account in more than a year.

### E. Michel

32. At 8:42 p.m. on January 29, 2004, two minutes after completing a 22-minute call

7

with Jozwiak, Edgecombe called Michel, another old friend and a registered representative at Wachovia. Although Michel had never before even *considered* purchasing Blue Rhino shares, he began a buying spree at 9:09 a.m. the next morning, just an hour after the markets opened, that went on for six days and included more than $1.4 million worth of purchases for himself, relatives, and customers.

33. Michel entered his first order to purchase Blue Rhino on Friday, January 30, 2004, for a customer who was also a relative. Michel also called Edgecombe three times that day. On Monday, February 2, 2004, Michel purchased $70,000 of Blue Rhino stock for himself, and continued to recommend and purchase the stock for his customers. The next day Michel purchased another $19,460 worth of stock for himself, while again continuing to purchase on behalf of his customers.

34. On Friday, February 6, 2004, one business day before the public merger announcement, Michel purchased $70,000 more Blue Rhino stock for himself, this time after receiving a loan from the same customer/relative mentioned in Paragraph 33. At the time, Michel had not received a loan to purchase stock in more than four years, and the $70,000 loan was more than seven times the size of any previous amount he had borrowed to buy stock. In addition, the loan violated Wachovia policy against receiving loans from customers to purchase stock.

35. Michel's Blue Rhino purchases for himself, his relatives and his customers totaled $1.4 million. During the six trading days between Friday, January 30, 2004, and the public merger announcement on Monday, February 9, 2004, Michel's Blue Rhino purchases, combined with the purchases by another relative who was a Wachovia registered representative in the same

8

office, accounted for at least 98% of all of Wachovia's volume in Blue Rhino stock, and between 12 and 42% of the total market volume in the company's securities.

### F. The Merger Announcement

36. On February 9, 2004, Blue Rhino publicly announced Ferrellgas was acquiring it. Roszak sold his Blue Rhino stock after the announcement at a profit of $23,230. Edgecombe, Jozwiak and Beladakis also sold their Blue Rhino stock after the public announcement for profits of $65,017, $14,136 and $29,783, respectively.

37. Michel sold his own Blue Rhino stock for a profit of just under $32,000. Michel's relatives profited by more than $92,381, while his customers took in almost $202,000.

### VI. VIOLATIONS

#### Count I – Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] And Rule 10b-5 [17 C.F.R. § 240.10b-5]

38. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

39. At all relevant times, Roszak knew or should have known the information concerning the possible acquisition of Blue Rhino was material, confidential, and non-public. In breach of the duty of trust and confidence he owed to Filipowski, and while in possession of this information, he purchased shares of Blue Rhino stock and disclosed the information to Jozwiak, Edgecombe, and two others relatives, whom he knew, or was reckless in not knowing, would purchase shares of Blue Rhino stock on the basis of that information or recommend the purchase to others on the basis of that information.

40. At all relevant times, Jozwiak knew, or should have known, the information he possessed concerning the possible acquisition of Blue Rhino that Roszak had conveyed to him was improperly obtained, non-public information. While in possession of this material, non-public information, Jozwiak purchased Blue Rhino stock.

Case: 1:06-cv-03166 Document #: 1 Filed: 06/08/06 Page 10 of 12 PageID #:10

41. At all relevant times, Edgecombe knew, or should have known, the information he possessed concerning the possible acquisition of Blue Rhino that Roszak had conveyed to him was improperly obtained, non-public information. While in possession of this material, non-public information, Edgecombe purchased Blue Rhino stock and disclosed the information to Beladakis, Michel, and two others whom he knew, or was reckless in not knowing, would purchase shares of Blue Rhino stock or recommend the purchase to others on the basis of that information.

42. At all relevant times, Beladakis knew, or should have known, the information he possessed concerning the possible acquisition of Blue Rhino that Edgecombe had conveyed to him was improperly obtained, non-public information. While in possession of this material, non-public information, Beladakis purchased Blue Rhino stock.

43. At all relevant times, Michel knew, or should have known, the information he possessed concerning the possible acquisition of Blue Rhino that Edgecombe had conveyed to him was improperly obtained, non-public information. While in possession of this material, non-public information, Michel purchased Blue Rhino stock for himself and recommended to his relatives and clients that they purchase it.

44. By their conduct described above, the Defendants, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or of the mails, directly or indirectly, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon other persons. By reason of the foregoing, the Defendants violated and, unless

10

enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## VII. PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Permanently restrain and enjoin the Defendants and their agents, servants, employees, representatives, attorneys-in-fact, and assigns and those persons in active concert or participation with them, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### II.

Order each Defendant who purchased and sold Blue Rhino securities on the basis of material, non-public information to disgorge his trading profits from each illegal trade, including prejudgment interest thereon.

### III.

Order each Defendant to disgorge all profits, including prejudgment interest thereon, realized by (i) the persons to whom that Defendant unlawfully communicated material, non-public information, and (ii) the person who traded while in possession of material, non-public information learned as a result of that Defendant's unlawful communication of material, non-public information.

### IV.

Order each of the Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-1.

## V.

Grant such other relief as this Court may deem just and appropriate.

Dated:   June 6, 2006

Respectfully submitted,

*Robert K. Levenson*
Robert K. Levenson
Florida Bar No. 0089771
Regional Trial Counsel
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6341 (direct dial)
(305) 536-4154 (facsimile)
levensonr@sec.gov
*Lead Counsel for Plaintiff*

Jason R. Berkowitz
Pennsylvania Bar No. 87775
Senior Counsel
U.S. Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6309 (direct dial)

Robert Moye
Illinois Bar No. 6225688
Senior Trial Counsel
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604
(312) 353-1051 (direct dial)
(312) 353-7398 (facsimile)
*Designated Local Counsel for Plaintiff*