

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | No. 06 C 3166 |
| Plaintiff, | ) ) | Judge Ruben Castillo |
| v. | ) ) | |
| MARK MICHEL, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following a five-day bench trial, this Court on November 26, 2007, entered judgment in favor of the Securities and Exchange Commission ("SEC") and against stockbroker Mark Michel ("Michel") for violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b). *SEC v. Michel*, 521 F. Supp. 2d 795 (N.D. Ill. 2007). The Court entered a permanent injunction against Michel and ordered him to disgorge $277,881 in profits gained from insider trading (representing $31,981 of his own profits and $234,470 of his clients' profits), plus prejudgment interest of $68,307. *Id.* at 831-32. The Court reserved jurisdiction to set an appropriate civil penalty pursuant to Section 21A of the Exchange Act. *Id.* at 832. Presently before the Court is the SEC's motion to impose a maximum civil penalty of three times Michel's profits, or $833,643. (R. 31, Pl.'s Mot. for a Civil Penalty). For the reasons stated below, the Court finds that a lesser penalty of $416,821 is warranted and therefore orders Michel to pay this amount.

1

## BACKGROUND

The facts underlying this case were set forth in detail in the Court's prior opinion and will not be repeated here. *See Michel*, 521 F. Supp. 2d at 802-22. In short, this Court concluded that in January 2004, Michel, a stockbroker at Wachovia Securities ("Wachovia"), invested $1.4 million in Blue Rhino stock on behalf of himself and his clients after obtaining non-public information that Blue Rhino was about to merge with another company. *Id.* at 800. When the merger became public, Michel and his clients sold their Blue Rhino stock, earning substantial profits. *Id.*

Following entry of judgment by this Court, Michel was terminated from his position at Wachovia. (R. 139, Def.'s Resp. at 4; R. 131, Pl.'s Mot. at 9.) Additionally, the SEC has administratively barred Michel from any future work in the securities industry. *In re Mark Michel*, SEC Release No. 57200, Order Making Findings and Imposing Remedial Sanction (Jan. 25, 2008) (available at *http://www.sec.gov/litigation/admin/2008/34-57200.pdf*). Michel is presently unemployed and has no regular source of income. (R. 139-2, Def.'s Resp., Ex. A, Michel Aff. ¶ 6.) His wife also has no income, and instead stays home to care for their two children. (*Id.* ¶ 5.)

## ANALYSIS

When an individual has been found liable of engaging in insider trading, the Exchange Act permits the Court to impose a civil penalty of up to "three times the profit gained or loss avoided" as a result of such trading. 15 U.S.C. § 78u-1. The decision to impose a penalty must be made "in light of the facts and circumstances of a particular case." *Id.* The civil penalty is intended to serve as a deterrent mechanism, because disgorgement of profits alone "merely

2

restores a defendant to his original position without extracting a real penalty for his illegal behavior." H.R. Rep. No. 98-355, 98th Cong., 2d Sess., 7-8 (1984), *reprinted in* 1984 U.S.C.A.A.N. 2274, 2280-81. In deciding on the amount of the penalty, the Court may consider such factors as the need for deterrence; defendant's acceptance of responsibility; defendant's net worth; the flagrancy of his violation; and other sanctions already imposed for the same conduct. *SEC v. Lipson*, 278 F.3d 656, 664-65 (7th Cir. 2002); *SEC v. Sargent*, 329 F.3d 34, 41-42 (1st Cir. 2003); *SEC v. Ferrero*, No. 91-271, 1993 WL 625964, at *19 (S.D. Ind. Nov. 15, 1993), *aff'd sub. nom SEC v. Maio*, 51 F.3d 623 (7th Cir. 1995).

The SEC argues that a maximum penalty is warranted based on Michel's extensive trading, his failure to admit any wrongdoing, and the need to deter him and others from engaging in insider trading. (R. 131, Pl.'s Mot. for a Civil Penalty at 1-2.) Michel counters that a maximum penalty is not warranted given the other sanctions he has already incurred, and that imposing such a penalty "will only place Michel, his wife, and two children (ages 7 and 4) in an impossible situation and guarantee their financial ruin." (R. 139, Def.'s Resp. at 3.)

The flagrancy of Michel's violation and his lack of contrition are factors that weigh in the SEC's favor. As detailed at length in this Court's opinion, Michel knowingly violated his position of trust by misappropriating material, non-public information to gain profits for himself, his family members, and numerous clients. *Michel*, 521 F. Supp. 2d at 812-17. Further, Michel has never admitted responsibility for his actions, and at trial, in the face of overwhelming circumstantial evidence that he possessed inside information, he offered unlikely reasons for his purchases and evasive testimony about the telephone conversations in which he gained inside information. *Id.* at 815-17. Even after entry of judgment, Michel still fails to take any

responsibility for his actions, instead characterizing these events as "an unfortunate situation" he somehow got himself "wrapped up" in. (R. 139, Def.'s Resp. at 8.) For these reasons, a substantial civil penalty is warranted. *Lipson*, 278 F.3d at 664 ("The evidence against [defendant] was overwhelming, and his insistence in the face of it that he is a shorn sheep argues for a heavy punishment to bring him to his senses.").

Nevertheless, Michel has already paid a high price for his actions, creating less of a need for imposition of a maximum penalty to act as a deterrent. Michel has lost his job, and is now unable to practice his chosen profession—the profession he learned from his father, and practiced alongside his uncle and cousin. *Michel*, 521 F. Supp. 2d at 811. Aside from any fine this Court imposes, Michel owes the SEC $346,188, only a small portion of which—$31,981—represents profits that actually went into his pocket. In addition, Michel also owes $90,000 to his attorneys, and in the course of this case has accumulated substantial credit card debt. (*See* R. 139-2, Def.'s Resp., Ex. A, Michel Aff. ¶¶ 4-7.) Given the high monetary price and the undoubted public humiliation Michel has suffered as a result of losing his job and his profession, the Court finds it unlikely that Michel will commit another securities violation. *See SEC v. Shah*, No. 92-1952, 1993 WL 288285, at *6 (S.D.N.Y. July 28, 1993) (criminal, regulatory, and disciplinary penalties imposed against defendant sufficiently furthered goal of deterrence). Further, because Michel can no longer work in the securities industry, he will not have any opportunity to commit securities violations on behalf of clients as he did in this case. The Court also considers that prior to this case, Michel worked as a stockbroker for ten years and was never sanctioned by a regulator for a securities violation. *See Falbo*, 14 F. Supp. 2d at 528-29 (declining to impose maximum penalty requested by SEC in part because defendant had no prior securities violations).

Finally, the Court considers Michel's present lack of income, his numerous debts, and the fact that he is the sole support for his family, which weigh against imposition of the maximum penalty. *See SEC v. Pardue*, 367 F. Supp. 2d 773, 777 (E.D. Pa. 2005) (imposing $25,000 penalty for "very serious" securities violation despite SEC's request for $136,697 fine where defendant had a negative net worth); *SEC v. Yun*, 148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001) (imposing civil penalty of $100,000 despite SEC's request for $807,000 fine and defendant's "significant levels of misconduct" where defendant's net worth was only $264,000). On the other hand, Michel is an educated, 37-year-old man who will likely find another line of work. At an administrative hearing before the SEC in January 2008, Michel indicated that he hopes to find work "at a bank or [in] mutual funds or something." (R. 141-2, Pl.'s Reply, Ex. 1, Tr. of Proceed., Jan. 14, 2008, at 7.) Michel testified at trial that he holds a license to sell insurance in Illinois, which may also help him generate income. (Trial Tr. at 308.) Additionally, Michel has approximately $40,000 in equity in his home, as well as IRA and 401(k) accounts totaling $500,000. (R. 139, Def.'s Resp., Ex. A, Michel Aff. ¶¶ 4, 9.) Accordingly, the Court does not find this a situation where the defendant's finances are so limited that only a nominal penalty should be imposed.

For all of these reasons, the Court finds that a civil penalty of $416,821, representing one-and-a-half times the amount of profits Michel has been ordered to disgorge, adequately serves the interests of justice and the deterrent purpose behind Section 21A of the Exchange Act.

## CONCLUSION

For the reasons set forth above, the SEC's motion to impose a civil penalty (R. 131) is granted in part and denied in part. Defendant Mark Michel is ordered to pay a civil penalty in the

amount of $416,821 pursuant to Section 21A of the Exchange Act, 15 U.S.C. 78u-1. This final matter having been resolved, the Clerk of the Court is directed to enter judgment in favor of the SEC and against Defendant Mark Michel in the total amount of $763,009.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: February 22, 2008**